WO

**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Gary Greenburg; Barbara Greenburg, <br><br>    Plaintiffs/Counterdefendants, <br><br> vs. <br><br> Roberts Properties, Ltd.; et al., <br><br>    Defendants/Counterclaimants. | No. CV-04-0001-PHX-SRB <br><br> **ORDER** |

This case involves a dispute between the owner of an R.V. park and two of its tenants. Plaintiffs Gary Greenburg ("Gary") and Barbara Greenburg have alleged that they were given written permission by the manager of the R.V. park, Defendant Craig P. Suddarth, to make certain modifications to their mobile home and the surrounding site, but that once they initiated those modifications, Suddarth, along with the owner and manager of the R.V. Park, Defendant Barbel Roberts, withdrew permission and threatened eviction. At issue is a motion filed by Defendants[1] (Doc. 140) which asks the Court, pursuant to both Federal Rule of Civil Procedure 11 and the Court's "inherent power" to protect itself against fraud, to dismiss the Complaint, as Plaintiffs allegedly defrauded the Court by forging Suddharth's signature on certain documents, then attaching those documents to each version of their

---

[1] Roberts Properties, Ltd., doing business as Gold Canyon R.V. Resort ("Resort"), is also named as a Defendant.

Verified Complaint.  The motion also alleges that Gary perjured himself by lying in his deposition concerning the authenticity of the documents.  In Plaintiffs' response, they deny all wrongdoing.

## I. BACKGROUND[2]

Beginning in or before March 2003, Plaintiffs inquired about the possibility of constructing a park model recreational vehicle ("mobile home")[3] on a lot located within the Resort owned by Roberts through Roberts Properties, Ltd., and managed by Suddarth.  As part of these discussions, Plaintiffs requested the Resort's architectural and construction rules and regulations.  Suddarth referred Plaintiffs to the Resort's standard rules and regulations booklet.  Those rules and regulations provide, in relevant part,

> No improvements, alterations, repairs, excavations or other work which in any way alters the appearance of any property shall be made without written approval.  No building, fence, wall or other structure shall be commenced, erected, improved or altered without written permission from Management.  No awnings or other structures shall be attached to any trailer, recreational vehicle or park model without written permission from Management. . . . Management has the right to refuse any plan, specification or grading plan which in its opinion is not suitable or desirable for aesthetic or other reasons.  Resident will be required to remove improvements, which have been made without Management . . . approval.

(Third Am. Compl., Ex. 1 at 2.)

---

[2] These facts were drawn from the Third Amended Complaint and the exhibits accompanying Defendants' motion.

[3] Park model recreational vehicles, sometimes referred to as "mobile homes," are a form of manufactured housing that can be transported from one location to another.

- 2 -

It is undisputed that Plaintiffs submitted construction plans to Resort management in March 2003, and that those plans (the "First Plans") were approved in writing by Suddarth. (Defs.' Mot. to Dismiss at 3.) Following approval of their construction plans, Plaintiffs signed two rental agreements with the Resort to lease a particular lot from April 3, 2003 to September 30, 2005.

At this point, respective accounts of subsequent events diverge sharply. Plaintiffs contend that on two separate occasions, once in July 2003 (the "Second Plans") and again in September 2003 (the "Third Plans"), they received written permission from Suddarth to alter their constructions plans. Attached to their Third Amended Complaint are the allegedly approved construction plans, both bearing what Plaintiffs allege to be Suddarth's signature. (Third. Am. Compl., Ex. 11, 14.) The RV park model as constructed varies markedly from the RV park model as depicted in the First Plans.

Defendants contend that Plaintiffs were never given approval to deviate from the First Plans. Instead, Defendants assert that Plaintiffs manufactured approval for the modified plans by forging Suddarth's signature, then submitting those forgeries as attachments to each of their verified complaints. In support of their position, Defendants provide a letter and an affidavit from a handwriting examiner who compared the signatures and concluded that Suddarth's signature on the Second Plans and Third Plans is a forgery.

The allegedly forged documents are the foundation of Plaintiffs' lawsuit. When Suddarth observed that Plaintiffs' mobile home site did not conform to the specifications of the First Plans, Suddarth ordered Plaintiffs to stop construction. Plaintiffs complained that they were constructing their home in accordance with plans that Suddarth approved; Suddarth countered that he had never given approval beyond the First Plans. Defendants threatened eviction if Plaintiffs did not bring their site into line with the First Plans. Plaintiffs chose to file suit instead of comply.[4]  Their original Complaint was filed with this Court on January 2, 2004. Thrice amended, the Complaint now includes ten causes of

---

[4]Plaintiffs have represented themselves throughout this action.

- 3 -

1 action, including intentional misrepresentation, "violation of tenant's covenant right to quiet 2 enjoyment," defamation, retaliation, breach of obligation of good faith, intimidation and 3 harassment, civil conspiracy, defamation, and two counts of discrimination. On April 12, 4 2005, Defendants filed a counterclaim, alleging breach of contract and defamation. 5 Defendants filed the instant motion to dismiss on September 26, 2005.

6 **II.     LEGAL STANDARDS AND ANALYSIS**

7 Defendants ask that this matter be dismissed in light of the fraud that Plaintiffs have 8 allegedly perpetrated, and continue to perpetrate, on the Court. Defendants correctly point 9 out that "courts have the power to dismiss an action when a party has willfully deceived the 10 court and engaged in conduct utterly inconsistent with the orderly administration of justice." 11 *Sun World, Inc. v. Lizarazu Olivarria,* 144 F.R.D. 384, 390 (E.D. Cal. 1992) (quoting 12 *Fjelstad v. Am. Honda Motor Co.,* 762 F.2d 1334 (9th Cir. 1985)). Plaintiffs' conduct, if 13 proven true, constitutes an affront to the administration of justice, and could result, at a 14 minimum, in the dismissal of this action with prejudice, the entry of default judgment in 15 Defendants' favor, an award of all fees and costs to Defendants, and even a referral to the 16 United States Attorney's Office for criminal investigation. *See* 18 U.S.C. § 1623(a) 17 ("Whoever under oath (or in any declaration, . . . verification, or statement under penalty of 18 perjury . . . ) in any proceeding before or ancillary to any court . . . of the United States 19 knowingly makes any false material declaration or makes or uses any information, including 20 any . . . paper, document, record, . . . or other material, knowing the same to contain any false 21 material declaration, shall be fined under this title or imprisoned not more than five years, 22 or both.); *Sun World, Inc.,* 144 F.R.D. at 389 (dismissing action, entering default judgment, 23 and awarding costs and fees, pursuant to Rule 11 and the court's inherent power to police 24 fraud, where district court concluded, after evidentiary hearing, that the defendant had 25 submitted fraudulent documents to the court and lied at his deposition); *Combs v. Rockwell* 26 *Intern. Corp.,* 927 F.2d 486, 488 (9th Cir. 1991) (affirming district court's dismissal of action, 27 under both Rule 11 and the court's inherent powers, where the plaintiff had falsified parts of 28 his deposition testimony); *Aoude v. Mobil Oil Corp.,* 892 F.2d 1115, 1116-18 (1st Cir. 1989)

1  (affirming district court's dismissal of action where the plaintiff fabricated a crucial
2  document, attached it to the complaint, and committed other dishonest acts, all in order to
3  "gain unfair advantage" in the litigation).  *See also Wyle v. R.J. Reynolds Indus., Inc.,* 709
4  F.2d 585, 591 (9th Cir. 1983).

5        The question for the moment is whether, based on the evidence provided in
6  Defendants' motion and Plaintiffs' response, the Court can conclude with an appropriate
7  degree of certainty that the forgery and perjury occurred.  Defendants offer an affidavit of
8  Suddarth, attesting that while he gave written approval of the First Plans, he did not for the
9  Second or Third, nor did Plaintiffs even present the latter two plans to him for approval.
10 (Defs.' Mot. to Dismiss, Ex. B.)

11       Defendants also offer the letter and affidavit of a handwriting examiner, William J.
12 Flynn, who scrutinized Suddarth's signature on the First Plans and compared it to the alleged
13 forgeries on the Second and Third.  (Defs.' Mot. to Dismiss, Ex. C.)  Flynn opines that
14 Suddarth's signature on the Second and Third Plans is a forgery. (Defs.' Mot. to Dismiss, Ex.
15 C.)  Flynn examined the signatures under a microscope and noticed evidence of inkjet
16 droplets and scan lines on the signatures in question, leading him to the conclusion that the
17 original signature was scanned using a portable scanner, then reprinted on the Second and
18 Third Plans with an inkjet printer.  (Defs.' Mot. to Dismiss, Ex. C.)  As further support for
19 his conclusion, Flynn notes that Suddarth's signature on the First Plans is identical to his
20 alleged signature on the Second Plans, an occurrence that flouts the "well-established
21 forensic principal that no two naturally made signatures will exactly overlay."  (Defs.' Mot.
22 to Dismiss, Ex. C.)

23       Finally, Defendants contend that because the signatures on the Second and Third
24 Plans are counterfeit, Plaintiffs must have lied to the Court by verifying a complaint that
25 contained as exhibits the fraudulent documents, and Gary must have lied in his deposition
26 when he stated that Suddarth signed the Second Plans in his presence.

27       In response, Plaintiffs deny all accusations contained in Defendants' motion. Plaintiffs
28 express doubt about the usefulness of handwriting "experts" and question Defendants'

- 5 -

1 motives in bringing the motion. Plaintiffs claim to have conducted their own examination
2 of the Suddarth signatures and concluded that while the signatures are "very similar," they
3 are not "perfect, exact or identical" matches, and therefore cannot be forgeries. (Pls.' Resp.
4 at 5.) Plaintiffs also claim to have asked five "lay persons" for their opinion about the
5 signatures, and, according to Plaintiffs, all five agreed that the signatures were "slightly
6 different." (Pls.' Resp. at 6.) Plaintiffs reiterate that Gary personally witnessed Suddarth sign
7 the Second Plans, and that Suddarth likely has no memory of that meeting because, according
8 to Plaintiffs, he has an alcohol abuse problem. (Pls.' Resp. at 9.) Plaintiffs point to what they
9 claim to be other inconsistencies in Suddarth's version of events as proof that he either lied
10 or forgot about signing the Second and Third Plans.

11 The Court concludes that the best way to resolve the issue of Plaintiffs' alleged fraud
12 is to conduct an evidentiary hearing. *See Sun World, Inc.,* 144 F.R.D. at 389 (conducting
13 evidentiary hearing to determine whether the plaintiff had perpetrated a fraud on the court
14 by submitting an allegedly fake document); *Wyle,* 709 F.2d at 585; *Hughes Tool Co. v.*
15 *Meier,* 489 F. Supp. 333 (Dist. Utah 1977). Both parties will be permitted to call witnesses
16 and present other evidence. Following that hearing, the Court will render a decision and, if
17 necessary, assess proper sanctions.

18 **IT IS ORDERED** setting an evidentiary hearing at which the Court will resolve the
19 issues raised by Defendants in their Motion to Dismiss. That hearing will occur on Monday,
20 January 9, 2006 at 2:00 p.m.

DATED this 22nd day of December, 2005.

Susan R. Bolton
United States District Judge